### PALIN v. CARY BRICK CO.

(Supremé Court, Appellate Division, Third Department. June 24, 1909.)

1. MASTER AND SERVANT (§ 252*)—DEATH OF SERVANT—ACTION UNDER EM-
    PLOYER'S LIABILITY ACT—SUFFICIENCY OF NOTICE.

    A notice of injury to an employé, averring that he was killed at a stated time and place by a landslide, which fell upon him, caused by neglect to furnish him a safe and reasonable place in which to work in digging clay; that the employer negligently omitted an inspection and proper rules governing the operation of the clay bank, and omitted to properly support it without warning decedent; and that his death was caused by the employer's aforesaid negligence and by the negligence of its superintendent in directing him to work at the clay bank while it was in a weak, dangerous condition without warning him of the dangers—was sufficient under the employer's liability act (Laws 1902, p. 1748, c. 600).

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 806; Dec. Dig. § 252.*]

2. MASTER AND SERVANT (§ 286*)—DEATH OF SERVANT—ACTIONS—SUFFICIEN-
    CY OF EVIDENCE.

    In an action for the death of an employé, whether the death was caused by negligence of the employer's superintendent or by the defective condition of the employer's works and ways *held* to be for the jury.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1010–1050; Dec. Dig. § 286.*]

Appeal from Trial Term, Albany County.

Action by Rosanna Palin, administratrix, against the Cary Brick Company. Judgment of nonsuit, and plaintiff appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

John Scanlon, for appellant.
Countryman, Nellis & Du Bois (Andrew J. Nellis, of counsel), for respondent.

JOHN M. KELLOGG, J. Plaintiff's intestate, her husband, was killed by the fall of a clay bank upon him while in the defendant's employ at its brickyard.· Her notice under the employer's liability act

(chapter 600, p. 1748, Laws of 1902), stated in substance that her husband was killed on the date stated, while in defendant's employ at its brickyard in Cohoes, by a landslide which fell upon him, caused by neglect to furnish him a safe and reasonable place in which to work in digging and removing clay; that the company negligently omitted an inspection and proper rules governing the operation of the clay bank, and omitted to properly support it, and suffered it to be in a dangerous condition without warning the intestate; that the death was caused by the defendant's aforesaid negligence and by the negligence of its superintendents in directing him to work at the clay bank while it was in a weak, dangerous, and hazardous condition, without warning and instructing him of its dangers. The defendant contends this notice was insufficient, within Finnegan v. N. Y. Contracting Co., 194 N. Y. 247, 87 N. E. 424. The defendant's bank boss and others were present at the time of the accident, and it had full knowledge thereof at the time. I think that the plaintiff, the wife of an Italian laborer, a person unable to speak the language and who was sworn through an interpreter, has fairly well succeeded in giving intelligent and sufficient notice of the cause of the death of her husband. She might well describe it as a landslide caused by negligently omitting to properly support the clay bank, arising from improper inspection and from its weak, dangerous, and hazardous condition. The action is therefore properly brought under the employer's liability act.

The business, properly conducted, was attended with some risks; but, if the risks were only such as necessarily attended the business, we cannot say that there was a defect in the defendant's works or ways. But the business was not properly conducted. The system of doing the work was known to be unnecessarily dangerous to all employed therein, and the jury might have found there was a defect in the defendant's works and ways. The defendant's general manager and superintendent, Abbott, swears that he told the bank boss not to undermine; "that it would be apt to fall down and kill somebody." Nevertheless the bank boss swears the system of undermining was always in force in the yard. The superintendent was in the yard nearly every day, and noticed the kind of clay obtained, and what men were at work, and he either saw the undermining or purposely shut his eyes to avoid the sight. The jury had the right to say that the defendant put its men at work in a place where their lives were continually endangered by the reckless manner in which the defendant did its business, and that the defendant made its works and ways defective and dangerous by causing its employés to undermine the bank at the immediate place where they were at work. The evidence tends to show that the fall of the clay bank which killed the intestate was caused by the undermining of the bank, which was going on at the time.

The evidence tends to show that Pellerin, the bank boss, with the knowledge of the company and his superior officers, was conducting this particular work in a known dangerous manner, in direct opposition to their directions. Nevertheless his methods obtained, and the company received the benefits of his alleged disobedience to their instructions in getting down more clay and obtaining better results from

the work of the men. The general manager swore that Pellerin "had charge of getting down the clay. * * * In relation to getting clay out, he represented us." There was no inspection of the banks by any superior. Everything at the banks was apparently left to his directions. These facts, and the fact that he managed this business with the knowledge of the defendant and its officers in opposition to their instructions, makes a fair question for the jury to determine whether he was not a superintendent, or a person exercising superintendence, within the meaning of the statute. Taking the view of the evidence most favorable to the plaintiff, it was a fair question for the jury whether the death was not caused by the negligence of the defendant's superintendent or by the defective condition of the defendant's works and ways. Under the employer's liability law the question of the contributory negligence of the intestate was clearly one for the jury.

The judgment and order should therefore be reversed, and a new trial granted, with costs to appellant to abide the event. All concur; SMITH, P. J., and COCHRANE, J., in result.